[No. 2990.   Decided March 4, 1899.]

BANK OF CALIFORNIA, *Appellant,* v. PUGET SOUND LOAN, TRUST AND BANKING COMPANY *et al., Respondents.*

INSOLVENT CORPORATIONS—FRAUDULENT PREFERENCE—CONSIDERATION FOR MORTGAGE — PRE-EXISTING DEBT — EQUITABLE ESTOPPEL — RECEIVERS.

Creditors of a bank in the hands of a receiver who consent to the discharge of the receiver and the re-opening of the bank, under an arrangement whereby one of the creditors is to ad-

vance money to the bank for the purpose of enabling it to resume business and partially pay outstanding claims, are estopped from claiming they had no notice of a mortgage for an antecedent indebtedness being given in consideration of such advance, when they have agreed to an extension of the time in which the bank might pay their claims, and have received dividends thereon out of the moneys so advanced; and they are also equitably estopped from setting up the insolvency of the bank at the time of the discharge of the receiver, for the purpose of showing that the giving of the said mortgage constituted a fraudulent preference.

The subsequent insolvency of a corporation cannot be given in evidence for the purpose of affecting the validity of a prior instrument, which was valid at the time of its execution.

Where general creditors have for more than a year acquiesced in an order of the court discharging a receiver and permitting an alleged insolvent bank to resume business, they cannot be heard to object that the receiver did not represent them at the hearing.

Appeal from Superior Court, Whatcom County.—Hon. HIRAM E. HADLEY, Judge. Reversed.

*Rothchild & Ach,* and *Kerr & McCord,* for appellant. *Black & Leaming,* for respondents.

The opinion of the court was delivered by

REAVIS, J.—Suit was commenced by appellant to foreclose a mortgage executed on the 26th day of November, 1894, by the Puget Sound Loan, Trust & Banking Company to appellant, to secure the payment of a certain promissory note for $8,000 of the same date. The complaint is an ordinary one in foreclosure. The banking company did not answer. Bennett, as receiver of the banking company, appeared, and filed an answer and cross complaint. The answer admitted the allegations of the complaint, with the exception that it denied the power and authority of the banking corporation to execute the mortgage, but in an affirmative defense alleged that the mortgage was executed to secure an antecedent indebtedness

of the bank at a time when it was insolvent. The cross complaint alleged the insolvency of the bank, and that the mortgage was void, because of preference of the appellant over the general creditors of the bank, and asked to have the mortgage canceled, and the appellant decreed a general creditor of the bank. A general denial was filed by appellant to the affirmative defense and cross complaint; and, by way of reply, it was alleged that prior to the 26th of November, 1894, the affairs of the banking company had been under control of a receiver; and, among other things, it was alleged that the appointment of the receiver had been occasioned by unforeseen circumstances and a general panic in the entire country, and not on account of the insolvency of the bank; that its assets were of such a character as to render it absolutely solvent; and that it was the desire of the officers of the bank and the creditors to have the bank reopened and resume business; that, in order to do this, it was necessary that cash be advanced to the bank, and that a proposal was made by the defendant bank to appellant for an advance of $7,500 in cash, and to take, as partial security for such advance, property of the stockholders outside of the bank; that appellant agreed, and made a loan of $7,500 upon the express condition precedent that a pre-existing indebtedness of $8,000 should be secured; that the officers of the bank and the creditors consented that such agreement should be made, and, in consideration of the agreement so made, that $7,500 was advanced; that the advancement of the $7,500 and the securing of the antecedent indebtedness of $8,000 by the mortgage in controversy were one transaction; that, prior to the agreement so made between appellant and the defendant banking corporation, the banking corporation filed its petition in the superior court in the case in which the receiver had been appointed, outlining its plan for reopening, alleging its solvency and its ability to

do a profitable banking business, and asking for the discharge of the receiver; that the then receiver filed a general denial thereto, and set up certain matters by way of affirmative defense; that, upon the issues thus raised, a trial was had, testimony taken, and the receiver discharged, and that the court then found that the bank was solvent, and capable of doing a successful banking business; that, immediately after such adjudication and discharge of the receiver, the mortgage was executed, and the loan of $7,500 made; that all the creditors of the bank, at the time the loan was made, were represented at such hearing by the then receiver, and are the same creditors who are now represented by the defendant receiver in this suit; that all the creditors had consented to the reopening of the bank, except those having claims for $100 or less, and, under the plan for reopening the bank, such nonconsenting creditors were to be paid their claims in full in cash, and that such non-consenting creditors were all so paid in fact; that the consenting creditors who executed an agreement for an extension of two years were paid 20 per cent. of their claims due from the defendant bank, and such payment was made out of the money furnished by appellant; and that appellant had received no dividend on its claims against the defendant bank.   It was also alleged that the defendants were estopped from asserting the insolvency of the bank at the time of the execution of appellant's mortgage by reason of the fact that all of the parties were acting in good faith, and of the facts as stated. The petition referred to in the reply of appellant was entitled in the cause pending in which the first receiver was appointed for the defendant bank, and was filed by the defendant.   Such petition recited the history of the appointment of a receiver in July, 1893, and set forth that the indebtedness of the bank had been reduced some $33,000 since the receiver had taken charge, and also that

the assets of the bank were double the amount of the lia- .
bilities; that, by judicious management, if the bank were
permitted to reopen, and its business conducted by its own
officers, it could pay all its liabilities, and various sched-
ules were filed showing the liabilities and assets of the
bank at that time; that the creditors, stockholders, and
others interested had made a careful examination and
thorough investigation into the affairs of the bank, and
had consented to the discharge of the receiver, and that
the bank resume its business upon a plan which included
an extension of time of payment to the creditors in install-
ments covering a period of two years; and that certain
creditors had agreed to make certain advances to the bank,
specifying such creditors, among whom was the appellant,
in the sum of $7,500.   The petition sets up many reasons
why the discharge of the receiver and the resumption of
business by the defendant bank would be for the best inter-
est of the corporation and stockholders.   To such petition
the then receiver, George A. Black, in November, 1894,
filed his answer, denying knowledge or information of
many matters sufficient to form a belief, traversing some
of the material facts set up in the answer, and making
certain suggestions relative to safeguards if the order dis-
charging the receiver and reopening the bank were made,
among which was that, under the plan proposed and sub-
mitted to the court, the best and most valuable bills receiv-
able, and other assets of the bank, were to be pledged in
order to procure the money with which to resume business,
and that it would be better to collect the moneys due the
bank on its bills receivable.   On the 23d of November,
1894, the matter came on for hearing; the receiver appear-
ing by his attorneys, and the petitioner, the defendant
bank, by its attorneys.   Testimony was heard by the court
and argument of counsel, and the court found that the
affairs of the defendant bank were in such a condition as

would enable the bank to reopen and do a general banking business; that there was no longer a necessity for the receiver, but the affairs of the bank could be more advantageously managed in the hands of its officers; and that it was for the best interest of the creditors of the bank, the stockholders, and all parties concerned, to have the management pass into the hands of the officers of the bank. It was also found that the various creditors of the defendant and the stockholders had entered into agreements for extension of the time of the payment of the indebtedness due by the bank, and had consented to its reopening under the management of a certain board of directors, and that certain parties had agreed to make advances to the bank in the sum of $21,500, on the condition that the bank should be opened by the officers. It was ordered that the receiver turn over the assets and property of the defendant bank to a board of directors, naming them, and return a report under the order of the court at as early a date as possible.

Many exceptions have been taken by appellant to the findings of fact of the superior court in this suit. The record and evidence brought here are extensive, and a careful examination has been made of all the evidence in the case. It does not appear from the record that any other creditors purported to be represented by the receiver here than those creditors who consented to the extension of time for the payment of their claims when the first receiver was discharged; but we assume that they were the same. The superior court found that the mortgage executed to secure the antecedent indebtedness of $8,000 "was not affirmatively brought home to Mr. White, whose claim was about $170, Markley, whose claim was about $100, and Mrs. Grimmette, whose claim was about $2,000"; but upon the exception made to this finding by counsel for the appellant, and a review of the evidence,·

41—20 WASH.

we are inclined to conclude that the three creditors mentioned were sufficiently advised of the agreement made for the advance of the money, after they had each agreed to the extension, to be charged with such notice. They, as well as each of the consenting creditors, had received two dividends upon their claims, coming out of the money in part advanced by the appellant under the agreement made for the resumption of business by the defendant bank; and they are therefore placed in the same rank with the other consenting creditors. Bad faith is not imputed to or proved of the appellant or the defendant bank, or any of the parties to the agreement, for the resumption of business by the defendant bank· in 1894. Such agreement, as heretofore stated, was presented to the superior court, and that court discharged its receiver, and directed all the property of the bank to be returned to its officers who had been named in the agreement between the creditors and stockholders; and the appellant advanced $7,500 under the agreement to the defendant bank, which, as observed, was used in paying the dividends which were paid to the other consenting creditors, appellant receiving no dividend at any time. The superior court, over the objection of counsel for appellant, admitted much evidence tending to show the insolvency of the defendant bank at the time the order discharging the receiver was made, in November, 1894. We think this was error. In view of the order discharging the receiver theretofore made by the superior court, and the agreement of the creditors which was before the court at that time, the question of the solvency or insolvency of defendant bank became immaterial; and we conclude that the facts shown constitute an equitable estoppel against the consenting creditors, and they may not now set up the insolvency of the defendant bank at the time mentioned in November, 1894, or prior thereto. In May, 1895, the defendant banking company was again

adjudged insolvent by the superior court; and we think this finding is supported by the evidence, but it is immaterial in the determination of this cause. If the mortgage executed and delivered to appellant in 1894 for the $8,000 was valid, nothing transpiring since could affect its validity. It was shown that the advance of $7,500 made by appellant at that time was in consideration of the execution of security for the payment by the defendant bank of $8,000 of indebtedness due appellant. There was a meritorious consideration here, for the security of which all the consenting creditors received a portion, and none of the complaining creditors have offered to return the dividends so received by them.

It is immaterial here to discuss to what extent the receiver, in 1894, at the hearing, when the court allowed the defendant bank to resume business, represented the general creditors, because, as stated, such creditors acquiesced in the conclusion there reached, and for a year raised no objection thereto. The case must be reversed, and it is remanded to the superior court, with direction to establish the priority of the appellant's mortgage over all creditors claiming at the time the order was made in the superior court, in November, 1894.

GORDON, C. J., and DUNBAR and ANDERS, JJ., concur.